DECISION
This case is before the Court for decision following a non-jury trial on a complaint by plaintiffs Louis and Juliette Lopez. In said complaint, the Plaintiffs seek to establish title to a portion of land designated as a right-of-way and to establish their rights to an easement on the land owned by defendant Laurie Blanchard. By counterclaim against Louis and Juliette Lopez, and by cross-claim against Louis Ducharme, Laurie Blanchard seeks declaratory judgments establishing that the survey she commissioned to establish the boundaries of her property accurately reflects the true boundaries of said property. Louis Ducharme cross-claims against co-defendant Laurie Blanchard for interference with his easement across her property. Decision is herein rendered in accordance with Super. Ct. R.Civ.P. Rule 52.
 FACTS AND TRAVEL
The plaintiffs, Louis and Juliette Lopez (Plaintiffs), own several parcels of land in the Town of Burrillville in the State of Rhode Island. The parcels of land which are at issue in this case are located on Tax Asssessor's Map 15 as lots 186 and 187 respectively. Both lots abut a parcel of land described as the "Right of Way" (Right of Way) on the Tax Assessor's Map number 15. The Right of Way runs the length of lots 184, 185, 187, 189, 190 and 194.[1] Louis Ducharme (Ducharme), a co-defendant in this matter, owns lot 184 on the Tax Assessor's Map, which also abuts the Right of Way and runs along the easterly border of lots 187, 186 and 185.[2] The other co-defendant, Laurie Blanchard owns lot 185, which borders the Right of Way on its easterly side and the Plaintiffs' lot 186 along lot 185's south side.[3]
Some time after she obtained title to the property in 1991, Juliette Lopez approached the Ducharmes about using the property located in the Right of Way behind lot 187 for the enjoyment of her family. The Ducharmes agreed to allow the Plaintiffs to use the property. Over the next several years, the Plaintiffs erected playground fixtures, a tree house, picnic table, and used the property for storage of truck bodies.
The events leading up to this litigation started in 1997 when Blanchard constructed a dog kennel with a chained linked fence at the back of her property in the Right of Way while the Ducharmes were in England on vacation. During the construction of the kennel, the operator of the bulldozer inadvertently knocked down the Ducharme's chicken coop. The Ducharmes complained to the Blanchards about the placement of the kennel in the Right of Way as it restricted their access to their property. Nonetheless, the Blanchards refused to remove the kennel.
In addition, some time in 1997, while the Plaintiffs were on vacation, Blanchard constructed a fence running along the front southwesterly border of her property and the Plaintiffs' property. The placement of the fence was determined by using a survey that was performed in 1993 when Blanchard purchased the property. Unfortunately for the Plaintiffs, the fence extended onto the middle of the Plaintiffs' existing driveway.[4]
The Plaintiffs promptly requested that the fence be removed, and the Blanchards refused. The Plaintiffs then commissioned a survey of their property to determine their property rights in the disputed area.
As a result of their new survey, the Plaintiffs filed four counts with this Court: (1) a declaratory judgment that the Blanchard lot is subject to an easement that benefits Juliette Lopez and her successors which would necessitate the removal of the dog kennel; (2) a declaratory judgment that the survey commissioned by the Plaintiffs accurately reflects the boundary between lots 185 186; (3) an injunction to remove the wooden fence from the Plaintiffs' driveway and compensatory damages to be awarded at trial; and (4) a claim of adverse possession of the Right of Way abutting lot 187. Laurie Blanchard counterclaims against the Plaintiffs, and cross-claims against the Ducharmes, seeking declaratory judgments establishing that the survey she commissioned accurately reflects the true boundaries of her property. Louis Ducharme cross-claims against co-defendant Laurie Blanchard for interference with his easement across her property.
 STANDARD OF REVIEW
In a non-jury trial, "the justice sits as trier of fact as well as law." Hood v. Hawkins, 478 A.2d 181, 184 (R.I. 1984). "Consequently, [s]he weighs and considers the evidence, passes upon credibility of the witnesses, and draws proper inferences." Id. "The task of determining the credibility of witnesses is peculiarly the function of the trial justice when sitting without a jury." Walton v. Baird, 433 A.2d 963, 964 (R.I. 1981). "It is also the province of the trial justice to draw inferences from the testimony of witnesses . . . ." Id. See also Rodriques v.Santos, 466 A.2d 306, 312 (R.I. 1983) (the question of who is to be believed is one for the trier of fact).
"In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon. . . ." See Super. Ct. R.Civ.P. Rule 52. The Rhode Island Supreme Court has held that in order to comply with this rule, the trial justice need not engage in extensive analysis and discussion. J.W.A. Realty, Inc. v. City of Cranston, 121 R.I. 374,399 A.2d 479 (1979); Eagle Elec. Co. v. Raymond Construction Co.,420 A.2d 60 (R.I. 1980). Strict compliance with the requirements of Rule 52 is not required if a full understanding of the issues may be reached without the aid of separate findings. 420 A.2d 60 (R.I. 1980). Even brief findings and conclusions are sufficient as long as they address and resolve pertinent, controlling factual and legal issues. White v.LeClerc, 468 A.2d 289 (R.I. 1983).
Furthermore, the Uniform Declaratory Judgment Act § 9-30-1 et seq., grants the Superior Court "power to declare rights, status, and other legal relations whether or not relief is or could be claimed." Section § 9-30-12 provides that the Uniform Declaratory Judgment Act should be "liberally construed and administered." This Court finds the Plaintiff's request for such relief to be appropriate under the Uniform Declaratory Judgment Act.
 PLAINTIFFS' COMPLAINT Declaration and confirmation of easement rights
The Plaintiffs request the following relief from this Court regarding Count One of their complaint: (1) a declaratory judgment that Blanchard's ownership and title to lot 185 is subject to an actual or necessary easement which easement inures to the benefit of Juliette Lopez and her successors in title; (2) a declaratory judgment that the easement grants Juliette Lopez the right to use the property described as Parcel II in the Blanchard Deed as a street and/or as a means of egress and ingress by motor vehicle from lot 187 to Centennial Street; (3) a declaratory judgment that Blanchard, her agents or assigns, have encroached on and interfered with Juliette Lopez's easement rights by placing and maintaining wire fencing and/or a dog kennel on the easement; and (4) a temporary, preliminary, and permanent injunction ordering Blanchard, her agents, assigns and/or successors in title, to remove the dog kennel and any other obstruction which interferes with the right to use the easement as a means of access to lot 187 and to refrain from any future conduct which encroaches on or obstructs the easement or Juliette Lopez's rights thereto. The Plaintiffs cite the language of Blanchard's deed to establish such easement.
Blanchard's deed regarding the Right of Way reads in pertinent part:
 "The above premises are SUBJECT TO rights of Duane Bishop, James H. Baker, and various other persons, their heirs and assigns, in and to said proposed street which extends southerly from said Centennial Street the entire length of said above premises." (Emphasis added.) (Uppercase in original.)
An easement is commonly defined as a non-possessory interest in the land of another. Bruce, J.W. Ely, J.W., The Law of Easements andLicenses in Land, West Group, 2001 § 1:1. The most common method of creating an easement is by express grant. See Ianotti v. Ciccio,219 Conn. 36, 40-45, 591 A.2d 797, 799-801 (1991). The law requires no technical formula of words to create a servitude against one property in favor of another. Id. The only essential element is that the parties make clear their intention to establish an easement. Scanlon v. Hopkins,128 Vt. 626, 629, 270 A.2d 352, 355 (1970). "Subject to" language is commonly used in a deed to refer to existing easements, liens, and real covenants that the grantor wished to exclude from warranties of title.See Ozyck v. D'Atri, 206 Conn. 473, 477, 538 A.2d 697, 699 (1988) (the purpose of the reference to the right of way may well have been to protect [the grantor] from any claim by [the grantee] based upon the warranty deed in the event that anyone should assert the right to cross the land conveyed).
In the present matter, the deed to Blanchard's property is comprised of two parcels of land (hereinafter Parcel I and Parcel II). Parcel II consists wholly of the Right of Way.[5] Blanchard's deed stipulates that Parcel II is "SUBJECT TO" the rights of Duane Bishop and James Baker, their heirs and assigns. James Baker is the predecessor in interest to the Plaintiffs, and Duane Bishop is the predecessor in interest of the co-defendant, Louis Ducharme.
The Court heard testimony from the parties concerning the easement over the Right of Way. James Ducharme testified that he and his parents have used Parcel II as a means of ingress and egress to access their pigpen and chicken coop since purchasing the property in February of 1961. Juliette Lopez testified that she wishes to assert her rights to use Parcel II as a right-of-way as an egress and ingress to her property. The Court heard testimony from Richard Blanchard who testified that he was unaware that the Blanchard deed comprised two parcels of land. Mr. Blanchard also testified that he was unaware of an easement existing on the back of his property.
This Court reviewed the exhibits entered by the parties in addition to the testimony. This Court found two exhibits particularly compelling: (1) the Blanchard deed providing for the rights of the Plaintiffs and Ducharmes over the Right of Way; and (2) the certification from the Blanchard's title insurance company stating that it does not insure against loss by the Blanchards by reason of the easement. The clear and unambiguous language of the title insurance that the Blanchard's obtained when they purchased the property clearly provides, "This policy does notinsure against loss or damage by reason of the following: . . . [R]ights of others in and to proposed street running southerly from Centennial Street the entire length of the insured premises." (Emphasis in original.)
Accordingly, this Court declares that Blanchard took title to Parcel II subject to the easement of the Plaintiffs and the Ducharmes and as such is precluded from erecting any structure that will prevent the parties from using the easement for ingress and egress of their respective properties. Inasmuch as the dog kennel prevents the parties from using the Right of Way as an ingress and egress, it must be removed.
THE DISPUTED SURVEYS
The Plaintiffs next seek a declaratory judgment that the survey they commissioned from National Surveyors (hereinafter Lopez Survey) in October 1997, accurately reflects that boundary between lots 185 and 186. Conversely, Blanchard seeks a declaratory judgment that the survey she commissioned by Scituate Surveys Inc., (hereinafter Blanchard survey) in August 2002, accurately reflects the boundaries of lots 185 and 186. Of particular concern to the Plaintiffs and Blanchard in this boundary dispute is the placement of the fence on the driveway between the two properties. The issue impacting the Ducharmes regarding the boundary dispute is that both commissioned surveys would take away a portion of their frontage on Centennial Street.
This Court reviewed the surveys commissioned by the Plaintiffs and Blanchard; the original deeds to the properties describing the boundaries; testimony from Richard Blanchard, Juliette Lopez and James Ducharme; as well as testimony from two surveyors, Derek Evans and John Messinger. After reviewing the record and testimony of the surveyors, this Court finds that the survey commissioned by Blanchard most accurately reflects the true boundaries of the properties in this matter. The testimony of John Messinger, the surveyor who conducted the Blanchard Survey, was less speculative and more thorough than that of Mr. Evans. The boundaries on which he based his survey were more faithful to the description in the original deeds than those of the survey commissioned by the Plaintiffs. For example, the Blanchard survey places the northern most boundary of lot 185 much closer to Centennial Street than the Lopez survey. See Defendant's Exhibit F.
This Court finds, however, that one boundary in the Blanchard survey does not adequately reflect the true boundary of the properties. This boundary concerns the width of Parcel II. Specifically, the controversy surrounds the landmarks that delineate where Parcel II of the Blanchard's property ends and the Ducharme property begins. These landmarks are two iron rods on the northeast corner of Blanchard's lot 185 (these iron rods would be on the northwest corner of the abutting Ducharme lot 184). The iron rod located 280.63 feet from the corner of Grove and Centennial Streets marked as IR on the Blanchard Survey, shall be designated "iron rod #1" for clarity. The iron rod 8.80 feet east of iron rod #1, also marked IR on the Blanchard Survey, shall be designated "iron rod #2." Mr. Messinger testified that he used iron rod #2 as the true northeastern boundary of the Blanchard property. See Defendant's Exhibit B. Using iron rod #2 would have the effect of diminishing the Ducharmes' frontage on Centennial Street by 8.8 feet. If Mr. Messinger had used rod #1 as a landmark, the Ducharmes would have been able to keep their existing frontage on Centennial Street and it would have been truer to the description of the deed granted to the Ducharmes.[6] The Ducharmes' deed entitles them to one-hundred and eighteen (118) feet from the proposed street to the iron stub located in the survey in the northeastern portion of their property. The Blanchard survey would be true to the description in the deed by giving the Ducharmes one-hundred and eighteen feet, if it used iron rod #1 as the northeastern boundary of the Blanchard property. Although this Court found that Mr. Messinger's testimony as to most of the boundaries in the Blanchard survey compelling, his reasoning for using iron rod #2 instead of iron rod #1 as the true boundary marker was unpersuasive. In addition, the testimony of Mr. Ducharme evidenced that all parties had considered iron rod #1 as reflecting the true property line and the Court found him to be a persuasive witness. This Court notes that even if iron rod #2 were used as a marker of the property line, the Ducharmes would be able to claim the boundary to iron rod #1 and reclaim their 8.8 feet of frontage through a theory of adverse possession.[7]
Furthermore, this Court notes that using the iron rod #1 does not have the effect of diminishing the property rights of the Blanchards since their deed clearly states that their Parcel II ends at the Ducharme's property line. The Blanchard deed dated October 19, 1993 states in pertinent part:
 "Beginning at a point in the southeasterly line of said street . . . and being the northwesterly corner of the lot hereby described; thence 63 degrees W. with said Centennial Street and crossing a proposed street hereinafter referred to about sixty (60) feet to the northwesterly corner of the land of Louis A. and Patricia M. Ducharme; . . . ." (Emphasis added.)
The ordinary and unambiguous language of the Blanchard's deed makes it clear that Parcel II of the Blanchard's property ends at the property of the Ducharmes. It is also clear from the deed that the grantor was not certain about the exact distance that the parcel encroached on the Ducharme's property line in the language "about sixty (60) feet."
Thus, this Court accepts the findings of the survey commissioned by the Blanchards by Scituate Surveys, Inc., to be — with one exception — the true and accurate boundary between lots 185 (Blanchard property) and 186 (Lopez property). This Court finds that the accurate boundary between lot 185 and 184 is iron rod #1 and extends south, 4 degrees westerly pursuant to the Ducharmes' deed.
The record reflects that the boundary change issue was not specifically raised in the Ducharmes' cross-claim against Blanchard. Rather, the issue of the iron rods was raised in count two of the Lopez complaint and the counter and cross-claims that Blanchard filed against Lopez and the Ducharmes regarding the surveys. Our Supreme Court has held that, "[I]n equity just as law, good pleading is essential and orderly practice requires that the determination of a cause in equity be confined to the issues raised by the pleadings." See Berman v. Reuter, 98 R.I. 350,201 A.2d 909, 912 (1964). However, when issues not raised by the pleadings are tried in the express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. See Sup.Ct. R.Civ.P. 15(b). The issue of the iron rods was litigated at trial and not objected to by the Lopezes or Blanchard. The Rhode Island Supreme Court "has always recognized that a trial court's authority is limited to resolving clear and imperative issues actually raised by the parties." Santurri v. DiPietro, 818 A.2d 657, 661 (R.I. 2003). Therefore, based on the evidence before it, this Court declares that the Ducharmes' true property line starts at iron rod #1.
 COUNT III: TRESPASS OF THE WOODEN FENCE
Count III of the Plaintiffs' complaint seeks an injunction against the Blanchards to remove the wooden fence which they believe trespasses on their property. In addition, the Plaintiffs petitioned this Court for compensatory damages as a result of this alleged trespass in an amount to be determined at trial. As this Court has declared the Blanchard Survey the true representation of the boundaries between lots 185 and 186, and inasmuch as the wooden fence is placed within the Blanchards' property line, this Court declines to order its removal. Accordingly, Count III (trespass) of the Plaintiffs' complaint is denied. Compensatory damages are also denied.
COUNT IV: ADVERSE POSSESSION
The Plaintiffs seek a declaratory judgment that the Right of Way abutting lot 187 belongs to them by adverse possession. The Ducharme's argue the Plaintiffs' have failed to meet the stringent requirements that are required by the Rhode Island Supreme Court to establish adverse possession of disputed land. See Tavares v. Beck, 814 A.2d 346, 356 (R.I. 2003).
It is well settled in Rhode Island that establishing title to real property by way of adverse possession is a statutorily created right.Walsh v. Cappuccio, 602 A.2d 927, 930 (R.I. 1992). The adverse possession statute, R.I.G.L. 1956 § 34-7-1, provides:
 "Where any person or persons, or others from whom he, she or they derive their title, either by themselves, tenants or lessees, shall have been for the space of ten (10) years in the uninterrupted, quiet, peaceful, and actual seisen and possession of any lands, tenements or hereditaments for and during that time, claiming the same as his, her or their proper, sole and rightful estate in fee simple, the actual seisen and possession shall be allowed to give and make a good and rightful title to the person or persons, their heirs and assigns forever; and any plaintiff suing for recovery of any such lands may rely upon the possession as conclusive title thereto, and this chapter being pleaded in bar to any action that shall be brought for the lands, tenements or hereditaments, and the actual seisin and possession being duly proved, shall be allowed to be good, valid and effectual in law barring the action."
In order to establish adverse possession, claimant's possession must be actual, open, notorious, hostile and under claim of right, continuous, and exclusive. R.I.G.L. § 34-7-1. See also Anthony v. Searle,681 A.2d 892 (R.I. 1996). To establish adverse possession, a claimant's possession must be actual, open, notorious, hostile, under claim of right, continuous, and exclusive for at least 10 years. The party claiming adverse possession must establish each of these elements by strict proof, that is, proof by clear and convincing evidence. Tavares,
814 A.2d at 356. In order to establish an adverse possession claim, continuity of possession must be sufficient to signal the true owner that claim of title contrary to his own is being asserted. Id. "Notorious" and "openness" elements of an adverse possession claim are established by showing that the claimant goes upon the land openly and uses it adversely to the true owner. Id. An adverse possession claimant can make a showing that the possession was "hostile" if the determination is made that possession of the occupier is to a visible line in all events, regardless of location of true boundary line. Id. To require adverse possession under a claim of right is the same as requiring hostility, in that both terms simply indicate that the claimant is holding the property with an intent that is adverse to the interests of the true owner. Tavares, 814 A.2d at 346.
 ADVERSE POSSESSION OF RIGHT-OF-WAYS
The Rhode Island Supreme Court has addressed adverse possession claims concerning rights-of-way which the State has abandoned. Spangler v.Schaus, 264 A.2d 161 (R.I. 1970) (right-of-way by grant is not extinguished by mere nonuse); Gammons v. Caswell, 447 A.2d 361, 367 (R.I. 1982) (any right-of-way defendants had in street after recording of plat plan showing street was extinguishable by proper proof of adverse possession of plaintiffs and their predecessors-in-title, in absence of evidence of dedication of street or showing that public at large had used it as a public highway). In Gammons, the Rhode Island Supreme Court established that a proposed street in a plat plan, which was not dedicated or used by the public at large as a roadway, may be acquired by adverse possession. 447 A.2d 361, 367 (R.I. 1982).
In considering the Plaintiffs' claim of adverse possession, it is necessary to first determine the rights of the parties vis-´-vis the Right of Way, and then review the Plaintiff's claim of their adverse use of the Right of Way abutting their property (lot 187). This Court's examination of the various deeds which are part of the record discloses that all the deeds mention the existence of the Right of Way, sometimes called the "proposed street."
Adelard Payette was the former owner in fee of each of the properties involved in this litigation owned by the Plaintiffs and the Defendants. Adelard Payette conveyed to Job A. Smith, by deed dated September 11, 1899, that tract of land owned by the Ducharmes. The legal description in the September 11, 1899 deed refers to a "proposed road." See Exhibit A-14. The proposed road (also referred to as "unnamed street, or "unnamed road,") is similarly recited in the chain of title deeds for the properties owned by each of the parties in this action. However, the chains of title for the properties abutting the proposed road do not recite an owner or owners of the proposed road.
A search of the records of the town of Burrillville indicates neither a dedication of the proposed road ever occurred, nor was there an acceptance of the proposed road by the town. See Plaintiffs' Memorandum of Law in Support of Their Motion for Summary Judgment at 3. Additionally, the Town Council of Burrrillville recently voted not to contest the adverse possession claim of the Plaintiff. See letter from Walter Kane, Solicitor for the Town of Burrillville, dated October 27, 1997. Therefore, under Gammons, the entire Right of Way abutting the Plaintiffs' and Defendants' properties is subject to a claim of adverse possession.
 RIGHT OF WAY ABUTTING LOTS 187 AND 184
Count IV of the Plaintiffs' complaint seeks a declaratory judgment that the right-of-way abutting lot 187 belongs to them under a theory of adverse possession.[8] The Plaintiff, Juliette Lopez, testified at trial that for over ten years she and her predecessor-in-title, her husband Louis Lopez, treated the Right of Way as their own property by cutting the grass, building play structures for their children, placing a picnic table on the property, and using the property as their own backyard.
On cross-examination, Juliette Lopez testified that she asked the Ducharmes for permission to use the Right of Way for her children to use as a playground. Louis Ducharme also testified that Juliette Lopez had asked his mother and father for permission to use the Right of Way as a place to build play structures for her children. The affidavit of Louis and Patricia Ducharme state that they were approached by Juliette Lopez, sometime after the Lopez children were born, and asked the Ducharmes whether she could use the Right of Way and some of their property for the Lopez children. See affidavit of Louis and Patricia Ducharme at 1-2. The Ducharmes gave Ms. Lopez permission to use the Right of Way and some of their land adjoining the Right of Way. Id. However, the Ducharmes never intended to give Ms. Lopez the land outright. Id.
The Right of Way abutting lot 187, not having been dedicated or accepted as a street by the town of Burrillville, was ripe for a claim of adverse possession pursuant to the Rhode Island Supreme Court's ruling inGammons. This Court heard testimony from Ms. Lopez and Mr. Ducharme that the Plaintiffs' had actual possession of the land by occupying it as an extension of their backyard. There was also testimony by Ms. Lopez that she and her husband displayed open and notorious possession of the land so that the true owner should have been put on notice of their occupancy. The testimony and record reflect that the Plaintiffs satisfied the ten (10) year requirement for continuous and exclusive possession of the property since Louis Lopez purchased the property on June 21, 1977, and transferred it to Juliette Lopez on June 3, 1991.
Therefore, the last standard for a successful adverse possession claim that the Plaintiffs must prove is hostile possession under claim of right. The Plaintiffs argue that they had hostile possession under claim of right because they treated the land as their own — by building structures on it and using it as an extension of their backyard — with an intent which is adverse to the interests of the true owner. However, this Court must consider the testimony of James Ducharme, together with the affidavits of his parents and the testimony of Ms. Lopez which show that Ms. Lopez asked permission of the Ducharmes before she used the Right of Way as her own.
The Ducharmes argue that since they granted Juliette Lopez permission to use the Right of Way, her use was not hostile to their interests, and her adverse possession claim must fail. However, this Court notes that in order for a claim of hostile possession to fail, the hostile possession must not be hostile to the true owners. The true owner of the Right of Way was the town of Burrillville, not the Ducharmes. Ms. Lopez did not have to ask the Ducharmes for permission to use the Right of Way because the Ducharmes were not the true owners. After a review of the entire record, this Court finds that the Ducharmes never claimed the Right of Way abutting lot 187 as their own. In fact, the affidavit of Louis and Patricia Ducharme states that they did not consider the Right of Way as their own property, but rather communal property owned by the state. The Ducharmes did object, however, to any claims that Ms. Lopez asserted over their property abutting the Right of Way. Indeed, if the Lopezs' play structures or other personal property extends across the right-of-way onto the Ducharmes' property, the Lopezes are hereby ordered to remove them.[9]
Accordingly, for the aforementioned reasons, this Court declares Juliette Lopez established by clear and convincing evidence that she is the true owner of the Right of Way abutting lot 187 by means of adverse possession. To the extent that any of the structures constructed by Ms. Lopez encroach on the Ducharmes' property, this Court orders them removed. In addition, the dimensions of the Right of Way are to be determined using the guidelines set forth in this decision as discussed above.
 CONCLUSION
For the foregoing reasons, the court declares the following: (1) regarding Count I of the Plaintiffs' complaint, this Court declares that the Plaintiffs and Co-Defendants, their heirs and assigns, have an easement over Parcel II of Blanchard's property to use as an ingress and egress to their respective properties. This Court also grants a permanent injunction ordering Blanchard to remove the dog kennel and from further obstructing the easement; (2) with respect to Count II, this Court declares that the wooden fence built by Blanchard does not encroach on lot 186 owned by Louis Lopez. This Court also declares that the Lopez Survey does not adequately reflect the boundary between lots 185 and 186. This Court also denies the Plaintiffs' request for an injunction ordering Blanchard to remove the wooden fence; (3) regarding Count III, this Court denies the Plaintiffs' request for compensatory damages and an injunction ordering Blanchard to remove the wooden fence; (4) concerning Count IV, this Court declares that Juliette Louis is fee simple owner of the Right of Way abutting lot 187 inasmuch as the boundaries have been established by this Court.
This Court further declares with respect to Blanchard's counterclaim and cross-claim that the Blanchard survey accurately reflects the boundaries of lots 185, 186 184, as adjusted by moving the boundary line which runs north-south from Centennial Street to Grove Street to iron rod #1 (located 280.63 feet from the corner of Grove and Centennial Streets marked as IR on the Blanchard survey).
This Court further finds in favor of the Ducharmes with respect to their cross-claim against Blanchard and orders the removal of the dog kennel from obstructing the Ducharmes' easement over the Right of Way abutting lot 185.
Finally, this Court orders the lis pendens filed against Blanchard's property by the Plaintiffs to be removed. Counsel shall prepare the appropriate judgment for entry.
[1] The owners of lots 189, 190, and 194 are not parties to this action.
[2] Louis and Patricia Ducharme have owned lot 184 since February 8, 1961. The Ducharmes deeded lot 184 to themselves and their son, James P. Ducharme, as joint tenants on January 12, 1989.
[3] The Right of Way was originally a proposed street which would run from the existing Centennial Street along the parties' lots to Grove Street. The Town of Burrillville never developed the proposed street and is not disputing the adverse possession claim of the Plaintiffs.
[4] The fence made it difficult to park vehicles in the Lopez driveway. As a result of this difficulty, the fence was repeatedly hit by automobile doors being opened and fell down. In addition, Juliette Lopez owns an ice cream truck service and parked the ice cream truck in the driveway during the summer. Ms. Lopez charged the refrigeration system of the truck during the night by extending an extension cord through the window of her house. The construction of the fence made it difficult to continue parking the ice cream truck in the driveway.
[5] The deed to Parcel II of Blanchard's deed refers to the Right of Way as a "proposed street."
[6] The Ducharme's deed grants them 159 feet of frontage on Centennial Street. This measurement consists of 118 feet from the proposed street to an iron stub. Then another 41 feet to a stone bridge.
[7] The Ducharmes have been using the entire one-hundred and eighteen (118) feet of frontage as their own property continuously, openly and notoriously and under color of title since February of 1961.
[8] The record in this case reflects that the title to the portion of the right-of-way abutting the Blanchard's property is not in dispute. All parties agree that title to this section of the Right of Way belongs to the Blanchards as part of Parcel II of their deed. The only aspect of this portion of the right-of-way in dispute concerns easement rights, which have been addressed supra in this decision. Therefore, this Court declines to include this portion of the right-of-way in its analysis of adverse possession. In addition, the title of the portion of the right-of-way abutting lot 186, described as Parcel II in Louis Lopez's deed, is not in dispute in this case.
[9] It is not clear from the record of surveys where exactly the Lopezes have built the play structures or stored other personal property on the Right of Way, or how much the structures and stored property extends to the the Ducharmes' property. To the extent that the Lopezes have placed any objects on the Ducharmes' property, this Court orders them removed.