Virginia CHERUBINO

v.

Anthony CHERUBINO et al.

No. 99–100–Appeal.

Supreme Court of Rhode Island.

June 28, 2000.

Marty C. Marran, Cranston, for Plaintiff.

Keven A. McKenna, Providence, for Defendant.

Present WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The defendants, Anthony Cherubino and Norma D'Aquila, appeal from a Superior Court decision granting the plaintiff Virginia Cherubino's prayer for partition and for an accounting relating to certain property located in West Warwick, Rhode Island. This case came before the Supreme Court on May 10, 2000, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After hearing the arguments of counsel and considering the memoranda submitted by the parties, we are of the opinion that cause has not been shown. Therefore, the appeal will be decided at this time.

The case facts from this litigated ill-fated love story are as follows: Anthony Cherubino (Anthony) began a relationship with Virginia Casparian (Virginia) in 1961, notwithstanding Anthony's earlier 1954 and still-existing marriage to another woman, Lucy DeFazio (Lucy). Over the course of the relationship, Virginia gave birth to three children, with Anthony being listed as the father on the birth certificates of all three children. During this time, Virginia also began to use the last name Cherubino. The couple, not to be impeded or stymied by the dictates of real property law, also managed to purchase a home in the Town of Coventry as tenants by the entirety, a legal estate normally reserved for the lawfully wedded. When Anthony's fickle flame of love later apparently cooled to mere embers in the early 1970s, he revealed to Virginia the existence of his then continuing lawful marriage to wife Lucy, and he decamped Rhode Island and returned to Lucy, who resided in Florida.

In June 1981, Anthony began to make plans to sell the Coventry home he had shared with Virginia and their children. Anthony however, apparently not wishing to see his Rhode Island family cast out into the cold, arranged to buy another home in West Warwick, again to the assured horror of property law professors everywhere, as a tenancy by the entirety with Virginia. The financing of the purchase price of the West Warwick home came through sale proceeds from the first home, in Coventry, coupled with a small down payment from Anthony's father. The remaining balance was secured by a mortgage on the property. From the outset of this second purchase, Virginia was skeptical of her ability to pay the mortgage on the property, but Anthony, ever the roving romantic, was not to be deterred from his "gift-giving," regardless of potential overburdening mortgage strings attached. Virginia's financial fears eventu-

ally were borne out, and despite sporadic monetary gifts by Anthony and his family members, her debts incurred in maintaining the West Warwick property continued to escalate.

Anthony continued to visit Virginia and their children in the early 1980s. At some point, however, Virginia, apparently finally disenchanted by her long-distance Lothario, informed Anthony that he was no longer welcome in the West Warwick home. Her removal of the long-standing welcome mat previously extended to Anthony was followed by her filing of a civil complaint in November 1993, seeking a judicial partition of the property, as well as an accounting of costs relating to that property and reimbursement for expenses incurred in raising their three children. Anthony answered and counterclaimed for a similar partition and accounting of the West Warwick property. In his counterclaim, he claimed, notwithstanding his precedent-defying tenancy-by-the-entirety arrangement with Virginia, to have severed any kind of joint interest with Virginia in the property via a straw transaction that served to transfer all of his interest in the property to his sister, Norma D'Aquila (Norma).

Virginia subsequently amended her complaint to include Norma as a defendant and to allege that the conveyance purporting to transfer Anthony's interest in the West Warwick property to Norma was a fraudulent conveyance, made in contravention of Rhode Island's Uniform Fraudulent Conveyance Act.

When the case was reached on the trial control calendar before a justice of the Superior Court on April 9, 1996, the parties entered a consent order in which they agreed to the appointment of a master and commissioner (the master) for purposes of hearing the partition action.[1] The order of reference cloaked the master with broad authority, providing that "[t]he master may arbitrate and determine with finality such legal and factual issues presented to him by and with the consent of the parties['] counsel." The master began hearings on the partition matter on March 5, 1997, culminating with a decision and report issued to the Superior Court on November 7, 1997. In his report, the master concluded that Anthony had not adequately demonstrated that he had been ousted from the West Warwick property by Virginia and therefore was not entitled to an accounting for Virginia's use and enjoyment of that property. He did find however, that Anthony was entitled to half of certain proceeds from periodic rentals of the property. He further found that Virginia had presented substantial evidence that she herself had borne the cost of maintaining the West Warwick property and that the sporadic sums of money paid to her by Anthony and his family were in the nature of gifts and not intended as repayable loans, as Anthony vigorously claimed. The master recommended to the court that the conveyance transaction between Anthony and Norma transferring Anthony's interest in the property be annulled and further that Virginia be entitled to credits reflecting half the mortgage, taxes and insurance, plus statutory interest that should have been paid by Anthony on the West Warwick property since it was purchased in 1981. Virginia subsequently moved to confirm the findings and decision of the master contained in his report.

On January 16, 1998, and again on February 23, 1998, a Superior Court hearing justice held hearings on Virginia's motion to affirm the master's findings and report. On February 23, 1998, the hearing justice entered an interim order, affirming the master's report *in toto*. The Superior Court interim order instructed the master to proceed with his report's recommendations filed with the court, to prepare an accounting, and to file a final report. That

---

1. The order *inter alia* constrained the master from making findings, without the prior consent of the parties, on "any alleged liability Anthony Cherubino may have had for child support to Virginia Cherubino."

order also provided that "[t]his is an interim order designed to facilitate the performance of those duties remaining of the master/commissioner, and the time for appeal on any issue shall not begin to run until the entry of final judgment."

Pursuant to the February 23, 1998, interim order, the master filed his final report with the Superior Court on April 23, 1998. In that final report, the master recommended that the purported transfer of Anthony's interest in the West Warwick property to Norma be nullified, and that the property be ordered sold to Virginia for $125,000, subject to the existing mortgage of $26,683.12 on the property as of April 7, 1998. He determined that the net equity for both Virginia and Anthony from the sale would be $98,316.88.

The master, pursuant to the Superior Court's interim order, next determined that Anthony's indebtedness for his half share of the mortgage on the property and for taxes and insurance that he had been obligated to pay from August 1981 through April 1998 totaled $49,386.49. To that amount, the master added Anthony's obligation to pay half the master's fee ($750) and a portion of counsel fees for Virginia's counsel ($2,580), for a total indebtedness, without interest, of $52,716.49. The master then computed the prejudgment interest on Anthony's unpaid obligations from August 1981 to April 1998 to be $56,011.34. That figure, when added to the indebtedness of $52,716.49, totaled $108,827.83. That total indebtedness, less the offset due Anthony in the amount of $49,158.44 from his net equity share of the sale proceeds, left Anthony owing Virginia $59,669.39.

The master, in his final report, also recommended that the counterclaims filed by Anthony and Norma be denied and dismissed with prejudice. On May 15, 1998, Virginia's motion to affirm the final report of the master was granted and final judgment was entered in her favor, pursuant to the recommendations made by the master. On May 29, 1998, Anthony and Norma appealed to this Court, each asserting that the Superior Court hearing justice erred by affirming the final report of the master and that this judicial error deprived them of their right to a trial by jury. They further assert that the hearing justice erred in affirming the final report because the master had exceeded the scope of his authority by deciding issues of both law and fact that were not properly before him during the hearings and by failing to provide adequate procedural safeguards during the course of those hearings. For the reasons discussed below, we deny and dismiss the defendants' appeal and affirm the Superior Court order affirming the master's final report.

■■■■ We commence our analysis of the case at bar by noting that Anthony and Norma both had waived any right to a trial by jury by their failing to claim a jury trial as required by Rule 38 of the Superior Court Rules of Civil Procedure, which specifies that a demand for trial by jury must be served, in writing, on the opposing party no later than ten days after service of the last pleading directed to the jury issues. That was never done. Thus, their appellate contentions in this regard are without merit.

We next note that Anthony and Norma believe and contend here that they had timely filed their objection to the master's report issued on November 7, 1997, thus preserving to themselves their right to a trial by jury on those issues that had been determined by the master and to which they had objected. They listed those issues as being "the fraudulent conveyance, quitclaiming of the subject property, third party claims and ouster," which they asserted were beyond the authority granted to the master in the April 9, 1996, order of reference. Their belief and contention is fatally flawed.

We observe from the record before us that both the plaintiff and the defendants had consented to the matter being referred to a master on April 9, 1996. All parties not only consented, but counsel for

Anthony and Norma drafted and presented the consent order that provided:

> "The Commissioner/Master shall make his findings and recommendations to the Superior Court on or before October 1, 1996. *Each party, within ten (10) days after the filing of such report may file any objection to such items report [sic] not otherwise subject to consensual arbitration* [.] The Court may affirm or modify, and/or reject such order within thirty (30) days after hearing on the confirmation of such report. If no objection be filed by any party to the recommendations of the master, those recommendations shall become final." (Emphasis added.)

The plain language of that order of reference required Anthony and Norma to specifically file any objections to the master's findings and report within ten days of the filing of his report. The last day for the filing of any such objection would have been, because of an intervening Saturday and Sunday, November 19, 1997. The record discloses that their objections were not filed until January 13, 1998, fifty-five days late. In addition, Anthony and Norma appear to have further complicated and confused the record in this case when, on November 25, 1997, they filed a notice of appeal to this Court in which they claimed to be appealing from the November 7, 1997, master's report, and claimed to be appealing from a jury trial before "Silverstein/master Stephen Fanning." Even if we were to construe that appeal form, from which no appeal ever was perfected, as their objection to the November 7, 1997, master's report, it was still out of time. We therefore conclude that Anthony's and Norma's appellate assertions here relating to those items in the master's report and which they have termed "nonconsensual" or beyond the master's court-given juris-

diction have been waived by their failure to make timely objection to the master's report as provided for in the April 9, 1996, order of reference. Consequently the master's recommendations had become final.

We further note that the Superior Court Rules of Civil Procedure provide a similar rule, Rule 53, relating to findings of fact made by a master in a non-jury action, as is the case here. Rule 53(e)(2) provides:

> "In actions to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous. *Within 10 days after being served with notice of the filing of the report any party may serve written objections thereto upon the other parties.* Application to the court for action upon the report and upon objections thereto shall be by motion and upon notice as prescribed in Rule 6(d). The court after hearing may adopt it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions." (Emphasis added.)

Thus, under both the April 9, 1996 order of reference and Rule 53(e)(2), the defendants' failure to make timely objection to the findings and recommendations contained in the master's report of November 7, 1997, has necessarily foreclosed their ability to raise again those same objections here on appeal. Further we note that the master, by explicit consent of the parties expressed in paragraph no. 5 in the order of reference, had been vested with the authority to determine *with finality* all factual issues presented by and with the consent of the parties.[2] This broad grant of authority served to make the master's findings of fact on the consensual issues presented by the parties binding on the court.[3] At the January 16, 1998, Superior

---

**2.** Rule 53(e)(4) of the Superior Court Rules of Civil Procedure, "[s]tipulation as to findings," provides that "[t]he effect of a master's report is the same whether or not the parties have consented to the reference; but when the parties stipulate that a master's findings of

fact shall be final, *only questions of law arising upon the report shall thereafter be considered.*" (Emphasis added.)

**3.** We further note that the parties failed to request transcripts relating to the master's

Court hearing to affirm the master's report, the defendants had full opportunity to be heard on the legal issues they now seek for us to determine pertaining to the master's report, but as reflected in the February 23, 1998, interim order, "the parties have not identified any disputed question of law that the master has resolved, one way or the other." We finally note that in the February 23, 1998, interim order, while making provision for the taking of an appeal, nothing therein purported in any way to permit or provide for an appeal on matters to which timely objection had not been filed.

For the foregoing reasons the defendants' appeal is denied and dismissed. The papers in this case may be returned to the Superior Court.

hearings, an omission that precludes any meaningful appellate review by this Court.

*See Bourdon's, Inc. v. Ecin Industries, Inc.,* 704 A.2d 747, 759 (R.I.1997).