**John R. SANTURRI**

v.

**Richard M. DiPIETRO et al.**

**No. 2001–188–Appeal.**

Supreme Court of Rhode Island.

March 7, 2003.

John R. Santurri, pro se, for Plaintiff.

Steven Aaron Robinson, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court for oral argument on December 10, 2002, pursuant to an order directing all parties to appear and show cause why the issues raised by this appeal should not be summarily decided. After hearing the arguments of counsel and considering the memoranda of the parties, we conclude that cause has not been shown. Accordingly, we shall decide the appeal at this time.

This is a property dispute between two neighbors, the owners of adjacent lots in the City of Warwick. The plaintiff, John R. Santurri (Santurri or plaintiff), purchased his property at 375 Warwick Avenue in 1996 from his predecessor in title, Dennis Esposito (Esposito). The property includes a two-story house, and, now in dispute, a paved driveway and a one-car garage that is connected to the home by a

breezeway. The defendants, Richard M. DiPietro and his wife, Victoria (the DiPietros or defendants), jointly own the land at 369 Warwick Avenue where Mr. DiPietro operates an auto body shop immediately north of, and adjacent to, Santurri's property. Until recently, a low retaining wall and chain-link fence between the properties appeared to any passerby to serve as an identifiable boundary line. However, looks can be deceiving. Indeed, a survey conducted by defendants in 1986 showed that the DiPietros' property extended southerly approximately eight feet beyond the retaining wall and included a portion of the land, then owned by Esposito, on which the garage and driveway are situated at 375 Warwick Avenue. When the boundary discrepancy was brought to Esposito's attention, he acknowledged the problem but took no action to quiet title or claim ownership by adverse possession. The evidence disclosed that the DiPietros allowed Esposito full use of the driveway and garage, as it had been previously used under joint ownership by Esposito and his grandmother.

However, apparently after Santurri acquired this disputed land, the DiPietros began using the northern portion of Santurri's driveway for parking and storage of various service trucks and wrecked automobiles, claiming use of the land by right of ownership. Distressed by the DiPietros' claims and the junk vehicles that detracted from his own engineering and design business, Santurri rigorously protested. This dispute ensued.

On June 29, 1999, Santurri filed suit, alleging deprivation of the use of his garage and driveway and interference with the peaceful and quiet enjoyment of his property. He sought a temporary restraining order against the DiPietros to remove the vehicles from Santurri's alleged property, a preliminary and perma-nent injunction against further encroachment, and a finding in equity declaring that the boundary between the two properties was the retaining wall. The DiPietros continued to claim ownership as established by the land survey and alleged that Santurri had actual knowledge of the true boundary lines from his predecessor in title. They counterclaimed, asking the Superior Court to recognize Santurri's suit as frivolous and to award them costs and attorney's fees.

After a three-day nonjury trial in Superior Court, during which Santurri appeared *pro se*, the trial justice issued a bench decision and found that "[the] adverse possession claim cannot prevail[,]" based upon Esposito's permissive use of the parcel and the DiPietros' acquiescence therein. The trial justice held that although Esposito clearly had a claim for adverse possession, he chose not to perfect it and thus abandoned the claim. The trial justice found that Esposito's permissive use of the property defeated the claim for adverse possession. However, notwithstanding the denial of plaintiff's claims for relief, based upon his findings that both parties had acted in good faith and were credible, the trial justice proceeded to fashion a remedy whereby Santurri would be given the opportunity to purchase at fair market value the disputed tract owned by the DiPietros. He ordered the parties to communicate with each other in an attempt to reach a "fair price" for the disputed strip. Failing an agreement, each party was directed to obtain an appraisal, and the court would determine the "fair price of [the] land." This Solomonic approach to justice resulted in an order directing both sides to obtain an appraisal of the disputed portion of the driveway and garage that was owned by the DiPietros on Santurri's "side" of the retaining wall.

Unable to come to an agreement on a fair purchase price and armed with their respective appraisal reports, each purporting to reflect the fair market value of the disputed strip, the parties returned to the Superior Court on April 6, 2001. The trial justice accepted defendants' appraisal and rejected the value estimate submitted by plaintiff. But he then concluded that "no ready, willing and able purchaser would ever show up to buy that strip of land known as the driveway and the garage." Thus, he determined that "the equitable and fair" solution was for plaintiff to pay to defendants one-half the value of the property as set forth in the appraisal. He ordered plaintiff to pay $3,175, one-half the appraised value of the disputed property, and he ordered the DiPietros to execute a quitclaim deed to Santurri. Judgment entered on April 11, 2001. The DiPietros filed a timely appeal.

We note at the outset that Santurri failed to perfect an appeal from the denial of his adverse possession claim and the correctness of that decision is not before this Court. The defendants have challenged the findings of the trial justice and the appropriateness of the remedy fashioned. These are the only issues with which we concern ourselves.

■ The defendants argue that after finding for defendants on the claim of adverse possession, the trial justice committed error by ordering the sale of defendants' property to plaintiff. Conversely, Santurri argues that the remedy fashioned by the trial justice was appropriate and should be affirmed so that he may purchase the disputed tract and gain full use and enjoyment of the property upon which the driveway and garage are situated.

■ "This Court will not disturb the findings of a trial justice sitting without a jury unless such findings are clearly erroneous or unless the trial justice miscon-ceived or overlooked material evidence or unless the decision fails to do substantial justice between the parties." *Harris v. Town of Lincoln,* 668 A.2d 321, 326 (R.I. 1995) (citing *Gross v. Glazier,* 495 A.2d 672, 673 (R.I.1985), and *Lisi v. Marra,* 424 A.2d 1052, 1055 (R.I.1981)). "It is well settled that our standard of review of the findings of fact by a trial justice in a non-jury case is deferential." *Macera v. Cerra,* 789 A.2d 890, 893 (R.I.2002) (quoting *Barone v. Cotroneo,* 711 A.2d 648, 649 (R.I. 1998) (mem.)). The trial justice found that, although Santurri came to court with clean hands and truthfully testified that he was unaware of the property encroachment, he was on constructive notice of the disputed boundary at the time he acquired the property. The trial justice found that at the time of the conveyance, the seller made known to Santurri the existence of an accurate survey, and, further, that Esposito deliberately disclosed the existence of the encroachments at the time of sale. Although the trial justice opined that Esposito's real estate agents may have failed to provide Santurri with a copy of the survey, "[Santurri] was made or should have been made alert to the existence of a survey regarding the deed." These findings are consistent with the record evidence and we decline to disturb them.

However, despite the finding that the property in question belonged to defendants, the trial justice proceeded to order a forced sale. We discern no authority on the part of the trial justice to order the prevailing party to a boundary dispute to convey the very property the court has decided he or she owns. We hold that this constitutes an improper exercise of judicial power wholly unsupported by legal authority. Contrary to his belief, in the context of this case, the trial justice has no equitable authority to fashion a remedy against a prevailing party. After adjudging Santur-

ri unsuccessful in his adverse possession claim and declaring that the contested strip of land belonged to the DiPietros, the trial justice had a duty to put the matter to rest. Although he clearly appreciated the practical reality that his decision would not resolve the underlying tensions between two dueling neighbors, he was not at liberty to craft an unsolicited remedy that mandated an unwilling party to convey his property, particularly at a price that was half its appraised value as accepted by the trial justice.

■ This Court has always recognized that a trial court's authority is limited to resolving clear and imperative issues actually raised by the parties. *Devane v. Devane*, 581 A.2d 264, 265 (R.I.1990) (per curiam). This restriction has previously presented itself in the context of a trial justice *sua sponte* determining the constitutionality of an underlying statute when neither party to the litigation has lodged a constitutional challenge. *See id.; see also Rhode Island Depositors' Economic Protection Corp. v. NFD Co.*, 687 A.2d 452, 455 (R.I.1997); *Easton's Point Association v. Coastal Resources Management Council*, 522 A.2d 199, 202 (R.I.1987).[1] The same restriction applies to the trial justice sitting in equity in the present case; neither party sought anything further than a determination of whether plaintiff was the rightful owner of a tract of land by adverse possession. Simply put, whether adjudging a claim in law or equity, a trial justice acts within the confines and authority that exist for the purpose of deciding live disputes involving " 'flesh and blood' legal problems with data 'relevant and adequate to an informed judgment.' " *Devane*, 581

A.2d at 265 (quoting *People v. Lybarger*, 700 P.2d 910, 915 (Colo.1985) and *New York v. Ferber*, 458 U.S. 747, 767–68, 102 S.Ct. 3348, 3359–61, 73 L.Ed.2d 1113, 1130 (1982)). The rationale behind limiting a trial justice to consideration of those claims raised by the parties is to ensure that any final judgment will proceed from a factual and legal analysis of the actual dispute presented, and to avoid hypothetical rulings on matters extraneous to the real source of contention between the litigants. *Devane*, 581 A.2d at 265. Clearly, a trial justice is not at liberty to address an underlying issue not before the court, nor may he or she order a remedy wholly beyond the scope of what the parties have sought. The trial justice in this case fashioned a remedy beyond the resolution of the adverse possession claim, and did so in a manner inconsistent with the judgment that defendants were the rightful owners of the property in question. Accordingly, the remedy of a forced sale may not stand.

For the reasons set forth herein, the defendants' appeal is sustained and the judgment ordering the sale of the disputed portion of driveway and garage to the plaintiff is vacated. The papers in this case are remanded to the Superior Court.

Justice LEDERBERG participated in all proceedings but deceased prior to the filing of this opinion.

1. It is a notable distinction that in the present case the remedy of a court-ordered sale of the disputed tract of land was a feasible option that either party could have pursued but did not; for the cases in which a constitutional challenge was brought *sua sponte* by the court, the parties themselves could not have challenged the validity of the statute because of their prior reliance before an administrative agency. *See Direct Action for Rights and Equality v. Gannon*, 713 A.2d 218, 225 (R.I. 1998).