**TOWN OF BARRINGTON**

v.

**Martin J. WILLIAMS et al.**

No. 2007–319–Appeal.

Supreme Court of Rhode Island.

June 10, 2009.

Raymond A. Marcaccio, Esq., Providence, for Plaintiff.

John P. McCoy, Esq., William R. Landry, Esq., James P. Marusak, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on December 2, 2008, on an appeal by some, but not all, of the defendants from a Superior Court decision and judgment that adopted the findings and recommendations of the court-appointed special master in an action seeking declaratory and injunctive relief over a disputed location of a platted but undeveloped street in the Town of Barrington. This Court issued an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda submitted by the parties, we are of the opinion that cause has not been shown and we shall decide this appeal without further briefing and argument. We affirm the judgment of the Superior Court.

### Facts and Travel

This long-standing and acrimonious dispute arises from conflicting surveys of a plat of land in the Town of Barrington (town or Barrington) and the sale of lots with reference to two differing plats. The surveys depicted different dimensions for parcels in the plat and each survey set forth a different location for Bogman Street, a platted street with a purported width of forty feet. Although Bogman Street appears on the original plat, it has not been developed or accepted by the town as a public street.[1] Beginning in 1993, because of the uncertainty about the street's location, the town planning board, the town building inspector, and the town zoning board denied development applications that were submitted by the owners of properties abutting the land designated as Bogman Street. In 1994, Leo J. Kraunelis and Anne M. Kraunelis, property owners whose applications had been denied, filed a declaratory-judgment action against Martin J. Williams, Collette A. Williams, Michael Rayner, and Lisa Rayner, seeking relief to open Bogman Street according to lines conforming to a survey that they themselves had commissioned with lines that, according to the survey, were a "prorated" version of the 1871 plat. The effect of this survey was to adjust the lines of lots that were developed in accordance with a 1940 survey performed by the town.

Additionally, in an attempt to resolve the conflict, Barrington filed this action on December 22, 1995, seeking a declaratory judgment "as to the location of Bogman Street and * * * the [town's] rights and obligations * * * to this paper street so-called." In its complaint, the town named as defendants: Martin J. Williams, Collette A. Williams, Anne M. Kraunelis, Leo J. Kraunelis, Donald S. MacQuattie, the Bristol County Water Authority, Michael S. Flaherty, Kathy A. Flaherty, John D. Kraunelis, and Cheryl A. Kraunelis, all of whom had property interests abutting Bogman Street. On May 6, 1996, both actions were consolidated in the Superior Court.

In turn, defendants Leo and Anne Kraunelis, Michael and Kathy Flaherty, and John and Cheryl Kraunelis, filed counterclaims against the town and cross-claims against the Williamses, MacQuattie, and the Bristol County Water Authority. They requested a declaratory judgment that the location of Bogman Street and the surrounding property boundaries were correctly set out in a 1993 survey conduct-

---

1. In our case law, a street that appears on a recorded plat but which in actuality never has been opened, prepared for use, or actually used as a street, has been called a "platted" street or a "paper" street. *See, e.g., Bitting v. Gray,* 897 A.2d 25, 33 (R.I.2006); *Robidoux v. Pelletier,* 120 R.I. 425, 438 n. 2, 391 A.2d 1150, 1157 n. 2 (1978).

ed by Ocean State Planners, Inc.[2] Additionally, the Kraunelises and the Flahertys moved to join other people who owned property in the vicinity: Michael and Lisa Raynor, Robert and Claire Frye, William and Martha Vihereuk, Dennis and Bonnie Hughes, John and Anne Murphy, Arthur and Wilma Read, Edward and Claire Feeley, Muriel Dodd, Jonathan and Lynn Hoy, and William and Diane Gempp. Those parties were joined without objection and subsequently filed a motion for summary judgment, arguing that, because none of their properties abutted the disputed portion of Bogman Street, they were not proper parties to the proceedings. The court denied the motion for summary judgment and ordered that an independent surveyor perform an "[a]s [b]uilt [s]urvey" of the area in dispute.

In light of the number of parties in these consolidated cases and the multitude of claims, counterclaims, and cross-claims, and because John and Cheryl Kraunelis, Leo and Anne Kraunelis, and Michael and Kathy Flaherty are the only parties who appealed from the judgment, we shall refer to them as the appellants.

In accordance with the order directing a survey of the area, the parties agreed to retain Richard Lipsitz (Lipsitz or master) of Waterman Engineers, a registered land surveyor, to conduct the survey of the disputed property. Thereafter, the town and several defendants filed a joint motion to appoint a special master pursuant to Rule 53 of the Superior Court Rules of Civil Procedure.[3] The trial justice granted the motion and appointed Lipsitz as special master, and issued an order on March 6, 2000 (2000 order) that delineated the master's powers and directed him to submit a report to the trial justice with findings of fact, conclusions of law, and recommendations.

The 2000 order explicitly provided that the master was empowered (1) to conduct an investigation of the facts and existing conditions, (2) to receive and report evidence as necessary, (3) to regulate all proceedings and take measures necessary for efficient performance of his duties, (4) to require the production of evidence, (5) to rule upon evidence and place witnesses under oath, and (6) to set a time and place for meeting with the parties and their attorneys. The court also ordered the master, upon completion of the investigation and hearing process, to prepare and submit a report with his findings of fact, conclusions of law, and, significantly for our purposes, his recommendations.

The master submitted his report on August 31, 2000 (2000 report) and recounted the proceedings conducted in connection with its preparation. Lipsitz explained that three hearings were conducted in the Barrington Town Hall and both written and oral evidence was received. He also conducted a field inspection of the disputed area with the interested parties, their attorneys, and the town solicitor in attendance. After reviewing the town's land evidence records, the testimony elicited during the hearings, survey texts, and applicable law, the master concluded that the conflicting surveys resulted from reliance by surveyors and contractors on a town plan recorded in 1940 in the Bar-

---

**2.** Significantly, in their counterclaim, appellants sought relief that is similar to that provided in the final judgment of the Superior Court; they sought a declaratory judgment that the boundaries of the parties' properties be established in accordance with the 1993 survey that they had commissioned, and that apparently prorated the size of the lots.

**3.** Rule 53(b)(1) of the Superior Court Rules of Civil Procedure provides that "[t]he court may appoint a master in all cases where the parties agree that the case may be so tried."

rington land evidence records that altered the plat's dimensions from those originally recorded in 1871.[4]

Based on his findings, Lipsitz recommended that the town conduct additional surveys to establish monuments at various intersections surrounding the plat "to serve as a reference for future surveyors working in the area." The master noted that these surveys would result in several existing structures encroaching on the lots of other property owners and on Bogman Street itself. Thus, Lipsitz recommended that the town abandon the westerly portions of Bogman Street and that property lines be adjusted accordingly to alleviate these encroachments. Lipsitz reported that the town had "indicated that it would be amenable to this solution." The master also noted that "[t]his solution would preclude any adverse possession [claims by lot owners] Obergs, Tomans, Kirbys, Raynors and [Williamses], in which we believe they would likely prevail, from being filed and having a resulting adverse impact on the Kraunelis, Flaherty and Vihereuk properties." There was no objection to the master's first report.

On February 2, 2001, Martin J. Williams and Michael Raynor filed a motion to accept the master's report and recommendations. After a hearing, the master's report was accepted by the trial justice, and a motion to perform additional surveys was granted. Additionally, the trial justice issued a new charge to the special master: (1) to establish monuments for future reference, (2) "to develop a proposed replat of the unopened roadways * * * in order to alleviate encroachments," and (3) "to develop a plan respecting the traditionally held areas of possession consistent with

the recommendations and findings contained in his report" (2001 order). The court also ordered the master to file a proposed replat with the court that included "the suggested revised street widths, lot layouts and monumentation[.]" Any objections to this report were to be "submitted in writing pursuant to Rule 53(e)(2) and heard by assignment thereafter prior to adoption of a final plan by the [c]ourt."

In a report dated January 31, 2003 (2003 report), the master proposed two alternate plans for the replat of Bogman Street. The relevant distinction between the two proposals was a difference in the width of Bogman Street, which the master noted had not been accepted by the town and remained a "continuing offer of grant." In one option, Bogman Street was reduced to a width of twenty feet, and, in the second option, Bogman Street was twenty-four feet wide. In both proposals, the lot lines would be changed in accordance with the plan.

Although there is no objection to the master's 2003 report in the record on appeal, after oral argument in this case, appellants produced a copy of a written objection to the 2003 report, which challenged the authority of the trial justice to order the abandonment of Bogman Street. However, there is no record that appellants assigned the motion for a hearing in accordance with Rule 53(e)(2); and, significantly for our purposes, we have no record that this objection was decided by the trial justice. Indeed, this Court has not been provided with a transcript of any proceeding before the Superior Court, save for the bench decision issued in this case.[5]

4. The master also noted the existence of a second conflicting survey, which, in his opinion, conflicted because the surveyor's "method of proration [was] applied incorrectly[.]"

5. The appellants filed a written statement indicating that a transcript would not be provided in this case—a course of action that this Court has declared to be "risky business."

On July 6, 2005, the trial justice announced his decision from the bench.[6] After reviewing the master's recommendations in the 2003 report, the trial justice adopted the plan that retained a twenty-four-foot right-of-way on Bogman Street. The trial justice declared that "the interests of all parties and the principles of equity require" that the court adopt as its declaration the master's proposed replat as the appropriate location of Bogman Street. A judgment was entered on July 14, 2005, and subsequently a corrected final judgment (judgment) reflecting the trial justice's decision was entered on August 2, 2005. In the judgment, the court adopted the findings of fact made by the master and declared Bogman Street to be a public street that is unimproved and not yet accepted by the town. The Kraunelises and Flahertys timely filed this appeal.

Before this Court, appellants first argued that "while laudable and Solomonic," Lipsitz's findings went "beyond the authority of the [s]pecial [m]aster." However, in supplemental filings, appellants contend that they "do not suggest here that the [m]aster exceeded his authority," but rather that the trial justice exceeded his authority by accepting one of the master's proposals for the width and location of Bogman Street. Additionally, appellants argue that the trial justice's decision clearly was erroneous because the resulting size and location of Bogman Street was not supported by the record.

The other parties argue that the reports and recommendations issued by the special master were well within his authority as set forth in the order entered by the trial justice pursuant to Rule 53. Additionally, they contend that appellants failed properly to object to the master's first report and thereby waived their right to appeal from the factual findings of the master and the trial justice.

## Standard of Review

▬ It is well settled that a justice of the Superior Court has discretion to grant or deny declaratory relief under the Uniform Declaratory Judgments Act (UDJA) (G.L.1956 chapter 30 of title 9). *Sullivan v. Chafee*, 703 A.2d 748, 751 (R.I.1997) (citing *Woonsocket Teachers' Guild Local Union 951, AFT v. Woonsocket School Committee*, 694 A.2d 727, 729 (R.I.1997) and *Lombardi v. Goodyear Loan Co.*, 549 A.2d 1025, 1027 (R.I.1988)). "A decision to grant or deny declaratory * * * relief is addressed to the sound discretion of the trial justice and will not be disturbed on appeal unless the record demonstrates a clear abuse of discretion or the trial justice committed an error of law." *Imperial Casualty and Indemnity Co. v. Bellini*, 888 A.2d 957, 961 (R.I.2005) (quoting *Hagenberg v. Avedisian*, 879 A.2d 436, 441 (R.I. 2005)). Accordingly, this Court reviews a declaratory judgment to determine "whether the court abused its discretion, misinterpreted the applicable law, overlooked material facts, or otherwise exceeded its authority." *Sullivan*, 703 A.2d at 751.

▬ It is the function of the trial justice to undertake fact-finding and then decide whether declaratory relief is appropriate. *Providence Lodge No. 3, Fraternal Order of Police v. Providence External Review Authority*, 951 A.2d 497, 502 (R.I.

---

*See 731 Airport Associates, LP v. H & M Realty Associates, LLC*, 799 A.2d 279, 282 (R.I.2002) ("The deliberate decision to prosecute an appeal without providing the Court with a transcript of the proceedings in the trial court is risky business.").

6. We note that the Kraunelises were absent from court that day and Michael Flaherty appeared *pro se*.

2008). "It is well-established that 'the findings of fact of a trial justice, sitting without a jury, will be given great weight and will not be disturbed absent a showing that the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong.'" *Id.* (quoting *Casco Indemnity Co. v. O'Connor*, 755 A.2d 779, 782 (R.I.2000)). In a nonjury action where a special master has been appointed, the trial justice "shall accept the master's findings of fact unless clearly erroneous." Rule 53(e)(2).

### Waiver

■ The first issue before the Court is the question of waiver. Rule 53(e)(2) provides that in non-jury actions, "[w]ithin 10 days after being served with notice of the filing of the report any party may serve written objections thereto upon the other parties. Application to the court for action upon the report and upon objections thereto shall be by motion and upon notice as prescribed in [Super. R. Civ. P.] 6(d)." The other parties argue that appellants did not object to the first report, which contained the master's findings and conclusions, within the ten days prescribed by Rule 53(e)(2). Further, they contend that the second report, the 2003 report, fully complied with the dictates of Rule 53 and was limited to recommendations of the master based on his earlier findings and conclusions.

Although appellants admit that they did not object to the 2000 report, at oral argument they claimed to have objected to the 2003 report and subsequently produced a copy of an objection dated February 28, 2003.[7] As noted, the Superior Court file does not contain a copy of this objection and there is no record evidence before this

Court that the objection was entertained by the trial justice. Furthermore, even if properly filed, the broad language of the objection did little to guide the trial justice's consideration of the challenges presented by appellants. *See Petition of Statter*, 108 R.I. 326, 334–35, 275 A.2d 272, 276 (1971) ("While a litigant's failure to file specific objections to a master's report may not be fatal, we do believe that he has a responsibility to assist the trial court and this court by making specific objections rather than setting them forth in a generalized fashion.") (citing *United States v. Merz*, 376 U.S. 192, 84 S.Ct. 639, 11 L.Ed.2d 629 (1964)).

■ "[A]s we have stated many times, this Court's 'raise-or-waive' rule precludes our consideration of an issue that has not been raised and articulated at trial." *State v. Bido*, 941 A.2d 822, 828 (R.I.2008) (citing *State v. Brown*, 915 A.2d 1279, 1282 (R.I. 2007) and *State v. Ibrahim*, 862 A.2d 787, 795 (R.I.2004)). "It is well settled that a litigant cannot raise an objection or advance a new theory on appeal if it was not raised before the trial court." *Id.* at 828–29 (citing *Hydro–Manufacturing, Inc. v. Kayser–Roth Corp.*, 640 A.2d 950, 959 (R.I. 1994)). Nevertheless, although we are not convinced that appellants' objection is properly before the Court, we shall address the questions raised in the objection and strictly confine our analysis to the issues set forth in the objection.

### Analysis

In the present case, the sole objection filed pursuant to Rule 53(e)(2) consisted of a complaint that the master, rather than delineating the survey characteristics of the disputed Bogman Street area, "essen-

7. The record reflects that the parties received notice of the 2003 report on February 20, 2003.

tially recommended compromise positions which would accommodate various encroachments and result in compromise property line locations that *no party to* this litigation contends are accurate." According to appellants, the master's work product "does not provide a basis for the adjudication of the contested issues of law and fact in this litigation, and would be inappropriate for incorporation into a judgment as some manner of 'forced compromise.'"

Additionally, appellants objected to the 2003 report on the ground that the options set forth by the master would require Barrington to abandon sections of Bogman Street and result in the replat of the area—events, appellants suggested, which require official action by the town council and the zoning and planning boards.

### Authority of the Special Master

■ In their objection to the 2003 report, appellants argued that by recommending two alternate replats of the disputed area, the master inappropriately proposed a forced compromise with respect to the dispute. Because this is a challenge to the authority of the master to issue the 2003 report, we deem it without merit.

Rule 53(a) provides that a "court may appoint a special master in any appropriate action which is pending therein." Such an appointment may be ordered upon agreement of the parties, as occurred in this case. Rule 53(b)(1). Once a master has been appointed, the master's powers are determined by the order of reference issued by the Superior Court. Rule 53(c). Subject to the specifications and limitations contained in the order of reference, "the master has and shall exercise the power to regulate all proceedings in every hearing before the master and to do all acts and take all measures necessary or

proper for the efficient performance of the master's duties *under the order.*" *Id.* (emphasis added). In the course of performing his duties, the master may require the production of evidence, rule on the admissibility of evidence, administer an oath to witnesses and examine them, and make a record of evidence offered and excluded. *Id.*

■ In the present case, by agreement of the parties, the first order issued to the master authorized and directed him to conduct an investigation, to receive and report evidence, and to regulate all proceedings. This order also required the master to submit a report with his "findings of fact, conclusions of law[,] and *recommendations for a professionally sound, just[,] and fair resolution to the controversy.*" (Emphasis added.) The master complied with this charge and issued the 2000 report; he determined the source of the discrepancies between the conflicting surveys and recommended that the town conduct new surveys, establish monuments, and abandon the westerly portion of Bogman Street. Consistent with the charge, the master also recommended a sound, just, and fair resolution to this controversy. Significantly, none of the parties filed a written objection to the master's 2000 report and his recommendations as provided by Rule 53(e)(2). The failure to make a timely objection to the findings and recommendations of a master appointed in accordance with Rule 53 serves to foreclose a party's ability to raise an objection in this Court. *Cherubino v. Cherubino*, 756 A.2d 174, 178 (R.I.2000).

Pursuant to Rule 53(e)(2), after a report by the master has been filed without subsequent objection, a party may motion the court to take action upon the report. In the present case, the trial justice granted a motion to approve the master's report, findings, and recommendations. The trial

justice subsequently issued an order that directed the master to establish the monuments as recommended in his report and "to develop a proposed replat of the unopened roadways as suggested in order to alleviate encroachments, and to develop a plan respecting the traditionally held areas of possession consistent with the recommendations and findings contained in his report." This 2001 order instructed the master to "perform particular acts" and was well within the trial justice's power under Rule 53(c). The master was directed to file a proposed plat with the court and "indicate the suggested revised street widths, lot layouts and monumentation, as recommended for further review and consideration by the Court." Importantly, this order reflected the master's recommendations for future action contained in the 2000 report, to which appellants failed to proffer any objection as required by Rule 53(e)(2). We deem this determinative of the issues before us.

In his second report to the court, the 2003 report, the master recommended either of two alternatives for the replat of Bogman Street, both reflecting a diminution in its width. This recommendation clearly was contemplated by the order of reference. Accordingly, we reject appellants' contention that the master exceeded his authority in recommending a replat of Bogman Street in accordance with one of two proposed plans. Having failed to object to the master's first report that recommended that "a new plat be prepared and recorded showing the revised street width, lot layout, and monumentation[,]" appellants may not now complain that the

master was without authority to do so. It is obvious that appellants' objection to the authority of the master did not arise until he issued a report with which they did not concur. Their dissatisfaction, however, is insufficient to disturb the judgment in this case.

### Authority of the Trial Justice

The appellants also objected on the ground that the trial justice lacked the authority to adopt either of the options proposed in the 2003 report because either alternative required legislative action by town authorities in order to effect an abandonment of portions of Bogman Street and replat the area. The basis of this objection is wrong as a matter of law. Bogman Street is not a public highway that must be abandoned by the town pursuant to the requirements set forth in G.L.1956 chapter 6 of title 24.[8] When a plat is recorded with streets and lots, and lots are sold with reference to the plat, there has been an incipient dedication of the streets and roadways. *Newport Realty, Inc. v. Lynch,* 878 A.2d 1021, 1033 (R.I.2005) (citing *Robidoux v. Pelletier,* 120 R.I. 425, 434, 391 A.2d 1150, 1155 (1978)). However, a platted street does not become a public highway until it has been accepted by the public; either by official action of the city or town or by use of the roadway by the public. *Id.* (citing *Robidoux,* 120 R.I. at 433, 391 A.2d at 1154).

The master, the trial justice, and the parties in this case agree that Bogman Street was included in the original plat of the area but that the town never developed

---

8.  General Laws 1956 § 24-6-1(a) provides in pertinent part:

    "Whenever, by the judgment of the town council of any town, a highway or driftway in the town, or any part of either, has ceased to be useful to the public the town council of the town is authorized so to

declare it by an order or decree which shall be final and conclusive * * *."

The chapter requires notice to owners of properties abutting the highway, § 24-6-2, and it provides for damages for those owners, § 24-6-3.

or accepted it. There is no evidence of use by the general public or any suggestion of the public's right to use Bogman Street as a public way. *See Eddy v. Clarke,* 38 R.I. 371, 379, 95 A. 851, 854 (1915) (" '[T]o create a public way by use the proof must show that the use has been general, uninterrupted, continuous[,] and adverse so as to warrant the inference that it had been laid out, appropriated, or dedicated by the proprietors of the adjoining land to the public.' "). Because Bogman Street has not been accepted as a public way, abandonment by the town was not required. Accordingly, we deem this objection to be without merit.

■ Moreover, after careful review of the record, we are of the opinion that the trial justice appropriately adopted the recommendations of the master and, in order to put an end to this seemingly interminable saga, rendered a decision that acknowledged the difficult issues before him. He recognized that the litigation was extremely vexatious and that "neither of the suggested [replats of Bogman Street has been] met with universal enthusiasm[.]" Nevertheless, the trial justice determined that the interests of all parties and the principles of equity required that he adopt the recommendations of the master. We note that Rule 53(e)(2) specifically provides that the court, after a hearing, may adopt the master's report. *See Petition of Statter,* 108 R.I. at 334, 275 A.2d at 276 (Rule 53(e)(2) authorizes the trial court to adopt the report of the master in whole or in part).

This dispute stems from a town plan that was recorded in 1940 and altered the dimensions delineated in the original plat of the area. Subsequent surveys that relied on this 1940 plan were in conflict with each other and the original plat. Several lots in the plat were developed based on these conflicting surveys, and the structures encroach on other lots. As was noted by the special master, claims of adverse possession by these landowners against the owners of neighboring lots would likely succeed, and the owners who have developed their lots would be afforded a remedy at the expense of the owners of undeveloped land.

If, rather than implementing the trial justice's decision, the adverse-possession claims were to be litigated, appellants would likely lose the westerly portions of their properties because there are encroaching structures located on that land. This result would significantly reduce the size of these lots because they would not gain any of the land on the easterly side of their lots, currently depicted as Bogman Street.

Moreover, several of the lots that appellants own are not even affected by the judgment before us, either by a change in lot size or location. The two lots owned by appellants Leo and Anne Kraunelis that are impacted by the judgment have not been developed; there are no structures on the lots, and, according to the judgment, the parcels will increase in size.

In response to the concern appellants expressed during oral arguments that the reduced width of Bogman Street may have a negative impact on future development of those lots, we note that the town is a party to this case. Barrington neither objected to the trial justice's decision, nor did the town appeal from the judgment. Therefore, the town is bound by the decision.

Finally, we are satisfied that appellants' contention that the trial justice's decision clearly was erroneous is without merit. In rendering his decision, the trial justice considered both the factual elements of the dispute, as reported by the master, and the equitable interests of the parties, as

included in the master's 2000 report and his recommendations for a *"professionally sound, just[,] and fair resolution to the controversy."* (Emphasis added.)

That appellants are unhappy with the result is obvious; however they have failed to demonstrate that the decision of the trial justice was erroneous. The findings of the master as set forth in the 2000 report were accepted by the parties and are binding upon appellants. In addition to these findings, the master was charged with recommending a resolution in this case. He did so, and the trial justice adopted those recommendations in his decision.

We previously have held that "a trial justice is not at liberty to address an underlying issue not before the court, nor may he or she order a remedy wholly beyond the scope of what the parties have sought." *Santurri v. DiPietro,* 818 A.2d 657, 661 (R.I.2003) (holding that a trial justice asked to determine ownership of real property under a claim of adverse possession may not subsequently order the prevailing party to sell the disputed property to the original owner at a reduced price). The original complaint, counterclaims, and cross-claims of the parties in this case concern the location of Bogman Street and the property lines of the surrounding lots. Declaratory relief was sought to resolve the havoc wrought by the disparate land surveys. The trial justice's decision was based on two well-reasoned reports of the master, a procedure to which all parties agreed. We decline to disturb it.

### Conclusion

This litigation has been pending for nearly fifteen years; the case has consumed significant resources of the parties, the town, and the courts. The parties agreed to use the services of a special master, and the trial justice properly ordered the master to perform certain tasks. The master ably complied with the Rule 53 order and the trial justice appropriately adopted the master's findings. Based on these findings, the trial justice declared the location of Bogman Street and the surrounding property boundaries. In a case such as this, it is unlikely that any resolution will satisfy everyone, but this decision reflects a thoughtful, careful, and, we conclude, appropriate result.

For the reasons stated, we affirm the judgment. The record may be remanded to the Superior Court.